# McCULLOCH Et Al. *v.* BIANCHINI Et Al.

## No. 2900

November 10, 1930.                                     292 P. 617.

*Harry G. Pray* and *J. M. Frame*, for Appellants:

*John R. Ross,* for Respondents:

104

## OPINION

By the Court, SANDERS, J.:

J. R. McCulloch, J. H. Wash, and George A. Steele, qualified electors and taxpayers of the Fernley high

school district No. 4 in Lyon County, Nevada, have appealed from a judgment entered in an injunction proceeding instituted by them in the court below to prevent Pete Bianchini, Mary E. Meginness, and A. R. Kramer, as the board of trustees of said Fernley high school district No. 4, from selling certain negotiable bonds of said district amounting to $35,000.

██ The principle that district school trustees have such powers, and such powers only, as are conferred upon them by the legislature, either expressly or by necessary implication, to issue bonds for school purposes, and that a compliance with all the requirements of the provisions of the law is essential to the validity of such bonds, is settled by ·so many decisions of the courts of last resort as that the principle may be considered to be elementary. In the case at bar it is contended that the board of trustees of the Fernley high school district No. 4 so far digressed from the provisions of the school law relating to the calling, holding, and return of the elections held for voting the bonds in question that they should be prevented from issuing the same upon all the grounds urged for the reversal of the judgment.

It appears that the board of trustees of Fernley high school district No. 4, by resolution, submitted to the qualified electors of said district, at an election called by them and held on April 7, 1928, the question of contracting a bonded indebtedness of the district in the sum of $20,000, for the purpose of constructing additions and other improvements to the school buildings in said district. It appears that, upon the completion of the count, by the board of election, of the ballots, 79 were cast "for the bonds" and 38 were cast "against the bonds." It appears that, upon the completion of the count, the board of election caused to be delivered to the county clerk of Lyon County the poll list, tally sheet, registry list, and the ballots kept by them.

It appears that the board of trustees determined·that $20,000 would not be sufficient for the purposes for which the bonds were voted on April 7, 1928, and thereafter, by

resolution, submitted to the qualified electors of said district, at an election called and held on June 6, 1929, the question of contracting an additional or supplemental bonded indebtedness of $15,000. The proof shows that, upon the completion of the count, 70 ballots were cast at this election "for the bonds" and 68 ballots were cast "against the bonds." It appears that the board of election returned the poll list, tally sheet, registry list, and all ballots kept by them and cast at this election to the county clerk of Lyon County.

It appears that in July, 1929, the plaintiffs, appellants here, filed an injunction suit against the defendants, respondents here, to prevent them from selling the bonds voted at said two elections; no temporary restraining order was obtained on the filing of the complaint to prevent the defendants from taking any steps to sell said bonds pending the suit. The defendants demurred to the complaint, and thereafter proceeded to advertise the sale of the bonds so voted, regardless of the suit, and on July 15, 1929, sold the bonds voted at both elections to the highest and best bidder. The demurrer interposed to the complaint was subsequently sustained, and thereafter, in September, 1929, the plaintiffs filed an amended complaint to which the defendants made answer.

Upon issues thus made the case was tried to the court without a jury. After a full hearing, the court, in accordance with its decision upon the merits, made findings of fact and conclusions of law, upon which it was adjudged and ordered that the plaintiffs take nothing by their action, and that their complaint be dismissed; hence this appeal.

The plaintiffs seek reversal of the judgment upon two grounds: First, that the election held on April 7, 1928, was illegal and void, in that the election board did not issue any certificate showing the result of the election, and did not immediately, or at all, send by mail or otherwise a copy of any certificate of the result of the election to the deputy superintendent of public instruction of said district; second, that the defendants did not post notices

of the election held on June 6, 1929, ten days before the day upon which the election was held.

These propositions are predicated upon plaintiff's interpretation of the provisions contained in the school law pertaining to school district bond elections. In chapter 15, sec. 193, of the school law, denominated "School District Bonds" (section 3433, 1 Revised Laws), it is provided:

"The election provided in this act [section 192] shall be called and held, and the vote canvassed and returned, in all respects as nearly as may be in accordance with the provisions of law now governing the election of school trustees; provided, that if there is a newspaper published in the school district, the notice shall be published for at least once a week for two successive weeks, preceding said election. * * * "

The section then goes on to provide what the election notice shall contain.

Section 194 of the school law, chapter 15 (Rev. Laws, sec. 3434), provides:

"If upon the official determination of the result of such election it appear that a majority of all the votes cast are 'For the Bonds,' the board of trustees, as soon as practicable, shall issue the negotiable coupon bonds of the district in such form and denomination as the board of trustees may direct. * · * * "

■ Counsel for plaintiffs insist that the evidence offered at· the trial shows indisputably that there was no official determination by the election board and return of the results made to the deputy superintendent of public instruction of the district of the election held on April 7, 1928, or elsewhere, as required by law.

Section 60 of the school law (section 3298, 1 Revised Laws) provides that:

"The board of election in districts of the first class shall keep a poll-list and tally-sheet, which, together with the registry list and all ballots cast, shall be delivered to the county clerk upon the count being completed, and such returns shall be kept as the law now provides for keeping returns of general elections. * * * "

The proof shows that, upon the completion of the count of the ballots cast at the election held on April 7, 1928, the board of election caused to be delivered to the county clerk of Lyon County the poll lists, tally sheet, and registry lists and all ballots cast at said election. The case seems to have been tried upon the assumption that the Fernley high school district No. 4 is a district of the first class. The proof further shows that the return of the board of election was made and received by the county clerk, and that the clerk canvassed the returns and found them to be correct.

It is true that no certificate of the result of the election was mailed by the board of election to the deputy superintendent of public instruction, but plaintiffs have not directed our attention to any provisions of the school law which requires the board in districts of the first class to furnish the deputy superintendent of public instruction of the district a copy of the certificate of the result of a district school bond election.

■ It is contended that the provisions contained in section 61 of the school law (section 3299, 1 Revised Laws), relating to certificate of election of school trustees, which provides, in substance, that the election board shall issue certificates of election to those trustees receiving the greatest number of votes cast, and that said board shall immediately send by mail a copy of each election certificate to the deputy superintendent of public instruction, by analogy applies to district school bond elections, and involves a duty upon the inspectors of a bond election to mail a certificate of the result of the election to the deputy superintendent of public instruction. We are not in accord with this interpretation of the law. By reference to section 193, it will be observed that a school district bond election shall be called, held, and returned in all respects "as nearly as may be" in accordance with the law governing the election of school trustees. The expression "as nearly as may be" manifestly contemplates that only such provisions of the law governing the election of school trustees as may be deemed applicable shall apply to district

bond elections. No reason appears why the inspectors of a school bond election should make and mail a certified copy of a certificate of the result of such election to the deputy superintendent of public instruction; consequently we conclude that, so far as this record shows, the election held on April 7, 1928, was called, held, the vote canvassed and returned, as required by law.

■ It is contended on the part of the plaintiffs that the election held on June 6, 1929, was illegal and void, in that the notices of said election were not posted ten days prior to the date thereof, as required by section 46 of the school law (section 3284, 1 Revised Laws), relating to the election of school trustees. This section provides that not less than ten days before the election held under the provisions of the act the trustees shall post notices in three public places in the district, which notices shall specify that there will be an election held at the schoolhouse in such district and the hours between which the polls will be kept open.

In the case at bar, the notices of the election were posted on the 27th day of May, 1929; pursuant to notice the election was held on June 6, 1929. Were the notices posted in time? Section 540 of the civil practice act (section 5482, 2 Revised Laws) provides in part that: "The time in which any act is to be done, as provided in this act, shall be computed by excluding the first day and including the last."

If this rule of measurement of time applies to school elections, the notices were posted as required by the statute. In California it is held that the rule of computation of time, under a statute identical to that of ours, applies to school election contests. Misch v. Mayhew, 51 Cal. 514, followed in Hagenmeyer v. Board of Equalization of Mendocino County, 82 Cal. 217, 23 P. 14; Derby v. Modesto, 104 Cal. 522, 38 P. 900; Bates v. Howard, 105 Cal. 182, 38 P. 715.

In the case of Antelope Valley U. H. S. Dist. v. McClellan, 55 Cal. App. 244, 203 P. 147, which involved the validity of a school bond election, the rule of the code of civil procedure as to the measurement of time for

the publication of the notices was applied. In the early case of Mason v. School District No. 14, 20 Vt. 487, a school district election case, it was held that, in computing the length of time during which notice of a meeting of a school district was given, the same rule should be applied as in the case of service of process— either the day on which the notice was posted, or the day on which the meeting was held, will be counted, the court stating that no reason appears why such rule of measurement of the time should not be applied.

Applying the rule to the election in question, the full ten days' notice was given.

Entertaining these views, we conclude that the judgment should be affirmed.

It is so ordered.

### On Petition for Rehearing

March 23, 1931.                                297 P. 503.

(Cole-

## OPINION

By the Court, SANDERS, J.:

Counsel for appellants have filed a petition for rehearing, in which it is contended that in our former decision (292 P. 617) the writer overlooked the fact admitted by the pleadings that the Fernley high school district No. 4 is a district of the second class and not one of the first class, and that because of this mistaken or erroneous assumption, the petition for rehearing, if for no other reason, should be granted. Conceding that the Fernley high school district No. 4 was erroneously assumed to be district of the first class, it does not follow that the petition should be granted. It is pointed out in the petition that section 60 of the school law (section 3298, 1 Rev. Laws), relating to the return of an election of school trustees, provides that the board of election in districts of the second class shall, upon completion of the count, deliver to the deputy superintendent of public instruction for the district the poll list, tally sheet, registry list, and all ballots cast at such election, which shall be kept on file in his office. It is also pointed out in the petition that section 61 of the school law (section 3299, 1 Rev. Laws), relating to school trustee elections, requires that the result of the election be forwarded to the deputy superintendent of public instruction. If we were dealing in this case with a school trustee election, it may be that the failure to comply with the provisions contained in sections 60 and 61 of the law would render the election void, but we are here dealing with a district school bond election, be it one of the first or second class. Section 193 (section 3433, 1 Rev. Laws) provides that a district school bond election shall be called and held, and the vote canvassed and returned, in all respects as nearly as may be in accordance with the provision of law now governing the election of school trustees. In our former opinion and for the reasons stated therein, it was held that the district school bond election held in Fernley high school district No. 4 on April 7, 1928, was valid, regardless of

the failure of the inspectors of said election to forward a copy of the certificate of the result of the election to the deputy superintendent of public instruction, as required in case of an election of school trustees. For the same reasons we now hold that the failure of the inspectors of said election, upon completion of the count, to deliver the poll list, tally sheet, registry list, and all ballots cast to the deputy superintendent of public instruction did not affect the result of the election or invalidate the bonds voted at said election, according to their tenor and effect.

It was contended on the former hearing that the district bond election held on June 6, 1929, was illegal and void for the reason that the notices of said election were not posted ten days prior to the date thereof, as required by section 46 of the school law (section 3284, 1 Rev. Laws), relating to the election of school trustees. In our former decision it was held that the proper method of determining whether sufficient notice of school bond elections was given was by excluding the day of posting and including the election day. Counsel for appellants contend that the holding is at variance with the opinion and decision of this court in State v. Brodigan, 37 Nev. 458, 142 P: 520. We are not in accord with this contention. In that case the court had under review a statute providing that whenever a secular act is to be performed on a particular day, and the day is a nonjudicial one, the act may be performed on the next judicial day. Stats. 1913, c. 61, 3 Rev. Laws, p. 3351. It was properly held that the act did not permit a nominee at a primary election to be held on September 1 to file his papers on August 3, though August 2 fell on Sunday; section 7 of the act (Stats. 1913, c. 284, subd. 3) providing that such papers shall be filed at least 30 days prior to the primary election. There is nothing in our former opinion which conflicts with this holding.

The petition for rehearing is denied.